UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| QMAXX PRODUCTS GROUP, INC., | ) Case No. 20-41063-659 |
| | ) Honorable Kathy Surratt-States |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |

## MOTION TO ABSTAIN

COME NOW TexDev LLC, SBC Investments, LLC, Ben Block, Craig Hiddleston, Mitchell B. Holdings 77 Inc., and Bryan Jordan (collectively the "Movants"), by their counsel, and for their Motion to Abstain state to the Court as follows:

1. QMAXX Products Group, Inc. ("QMaxx"), a manufacturer and distributor of anti-corrosion and lubrication products, is in the middle of an internal dispute involving various shareholders, directors and officers over the direction and viability of QMaxx and its future. More specifically, at the center of the dispute is David McCreery ("McCreery"), one of the officers, directors and shareholders, on the one hand, and Movants and some of its principals, on the other hand. The Movants are all secured creditors and some of them and/or their principals are also officers and/or directors.[1]

2. QMaxx owes Movants approximately $750,000 in the aggregate at the present time. Movants became dissatisfied with McCreery and his performance[2] and the inability of QMaxx, which has only annual revenues of about $250,000, to continue operating as a viable entity. With

---

[1] Craig Hiddleston is the President of QMaxx (as well as the CEO per the By-Laws) and one of four of its directors. Robert Meyer, the principal of TexDev LLC, is also a director. Stephen Blaschke is doing business as SBC Investments, LLC and is a director of QMaxx as well. The fourth director is McCreery, who is also an officer. For some reason, McCreery has designated himself as the CEO, which is contrary to the corporate governance documents. All Movants are either class A or class B preferred shareholders. McCreery is a holder of common stock of QMaxx.
[2] Movants believe that McCreery induced Movants to lend money to QMaxx on false promises that there was a capital investor ready to invest in QMaxx.

#2445144v3                    1

this becoming apparent, and after negotiations broke down between McCreery and Movants, whereby Movants sought a solution for payment or partial payment of the secured debt either through cash or in exchange for non-core QMaxx assets, the Movants initiated foreclosure proceeding with regard to various assets, including certain patents and other intellectual property. The assets that Movants were seeking are not believed to have any material value beyond the amount of Movants' secured debt and were not essential to QMaxx's operations, even if it could survive.

3.  McCreery, aware that he did not have the votes of the Board of Directors and shareholders to initiate bankruptcy proceedings to stop the foreclosure[3], seemingly solicited three friendly employees of QMaxx, including, his son, Max McCreery (the "Son") and two other friends or colleagues of McCreery (the "Petitioning Employees"), to commence the filing of this involuntary bankruptcy, which is seeking relief under chapter 11 of the Bankruptcy Code. The amounts owed per the initial involuntary petition were $3,256.50 for alleged unpaid expenses for the Son, $6,527.56 for salary and expenses to James Barnes, and $78,000 for salary and expenses for Stacey Brown.[4] Movants believe that the amounts claimed to be owed are likely overstated and do not comport with the records of QMaxx. That raises the question of whether the employee claims were being further manipulated to create or enhance the amount of the debts in order to initiate the filing.

---

[3] The corporate governance documents require a vote of at least 70% of the preferred shares to vote for a variety of significant corporate action. It is clear that McCreery recognized that the Certificate of Incorporation and the By-Laws of QMaxx were obstacles to McCreery getting his way.

[4] Movants believe that the records and documents of QMaxx indicate that James Barnes and Stacey Brown were being paid for their services on a current basis and that any monies owed for salaries or compensation were not substantial. The amount claimed by Stacey Brown seems to be substantially overstated as she only joined QMaxx in September of 2019 and was being paid. Within a couple of days of the filing, an amended involuntary petition was filed, which materially increased the amounts claimed to be owed to James Barnes ($49,027 rather than $6,527.56) and to Max McCreery ($17,297.37 for expenses rather than expenses of $3,256.50). Movants believe that QMaxx expense reports did not reflect any material unpaid expenses authorized by QMaxx. Movants would demand strict proof of the precise nature and extent of these claims and documents that would support this.

4. A significant amount of the debt of QMaxx is to Movants. Although there are some monies owed to other general unsecured creditors, these obligations are not overwhelming, especially in comparison to the monies owed Movants.[5] To date, no other creditors have joined in the filing of the involuntary brought by the Petitioning Employees.

5. Pursuant to section 305 of the Bankruptcy Code, a Court "may dismiss a case under this title, or may suspend all proceedings in a case under this title if ….. the interests of creditors and the debtor would be better served by such dismissal or suspension". 11 U.S.C. 305(a). In determining whether abstention is appropriate, Courts review and evaluate various factors. While the factors are articulated somewhat differently by various Courts, they are, in essence, the same. In evaluating the best interests of the debtor and its creditors, Courts consider a) the availability of another forum to address the various issues, b) the financial costs and burdens of a bankruptcy case, including the economy and efficiency of case administration, c) whether the commencement of a bankruptcy case would duplicate other efforts pending elsewhere, d) whether bankruptcy court is essential to a just and equitable resolution, e) the support of the non-petitioning creditors, f) the level to which other pending proceedings have progressed in addressing the issues that would impact the cost and expense of starting anew in bankruptcy court; and g) the purpose or motivation of the petitioning creditors seeking bankruptcy jurisdiction. *See* In re NRG Energy, Inc., 294 B.R. 71 (Bank. Minn 2003); In re Wine and Spirits Specialties of Kansas City, 142 B.R. 345 (Bank W.D. Mo. 1992); and In re Iowa Trust, 132 B. R. 615 (Bank N.D. Iowa 1992). Of primary import would be identifying the pragmatic benefits of all constituencies and evaluating efficiency and economy of administration. *See* In Re NRG, 294 B.R. at 80; and In re Iowa Trust, 135 B.R. at 623.

---

[5] There is also a creditor that claims a lien in some intellectual property. However, Movants do not believe that the lien was ever perfected.

#2445144v3     3

6. Movants assert that the involuntary filing is nothing more than collusion between McCreery and the Petitioning Employees and that this case is essentially a two party dispute. QMaxx has limited funds and resources. It does not have the ability to fund the substantial administrative costs that would burden the estate. The administrative costs and expenses would be significant as two party disputes are always so. Further, the legal and factual disputes, which are only summarized here, are extremely complex and would, in conjunction with what is a partnership or family feud, cause QMaxx and its estate, whether under chapter 11 or under chapter 7, to expend a huge outlay of administrative cost.

7. QMaxx does not have the monies on hand to fund this bankruptcy and does not have the ability to obtain any DIP funding (or if it did, any DIP funding at a reasonable cost) or pay any required adequate protection costs. After payment of administrative expenses and the amount of Movants' fully perfected secured debt, there would be no meaningful funds to distribute to creditors. In the meantime, any value of the intellectual property and other assets will depreciate while the battles ensue during the case.

8. McCreery, as only one of four directors, does not have the votes or authority to employ counsel for QMaxx; nor does he have the votes or authority to obtain DIP financing. He is not even the President of QMaxx although he has anointed himself as its CEO. A chapter 7 or 11 trustee, if appointed, would be equally burdened by the infirmities of this unbearable situation; and would be in a more dubious spot as he or she would not have the institutional knowledge or seed money to handle the case efficiently.

9. Likewise, it is telling that the petitioning creditors are those friendly or related to McCreery.

10. Consequently, in weighing all of the factors enumerated above and considering all of the facts relating thereto, this Court should abstain or dismiss the case.

11. Movants reserve the right to file a memorandum in support of this Motion and to respond to any pleading in opposition.

WHEREFORE, Movants pray that this Court abstain from hearing this case, that this case be dismissed and that this Court grant such other and further relief as may be just and proper.

> Respectfully Submitted,
> SUMMERS COMPTON WELLS LLC

Date: April 3, 2020        By:/s/ David A. Sosne
                           DAVID A. SOSNE (#28365MO)
                           BRIAN J. LAFLAMME (#49776MO)
                           8909 Ladue Road
                           St. Louis, MO 63124
                           (314) 991-4999/(314) 991-2413 Fax
                           Email: dasattymo@summerscomptonwells.com
                                  blaflamme@summerscomptonwells.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri to the parties requesting service by electronic filing. I hereby also certify that a copy of the foregoing was served via United States Mail, first class postage prepaid, on the date of the electronic filing of this document to those individuals and entities not requesting service by electronic filing. The individuals and entities being served electronically or by mail are:

United States Department of Justice
U.S. Trustee's Office
111 S. Tenth Street, Ste. 6353
St. Louis, MO 63102

Robert E. Eggmann
Thomas Riske
Carmody MacDonald PC
120 South Central, Suite 1800
Clayton, MO 63105

Daniel D. Doyle
Lashly & Baer, P.C.
714 Locust Street
St. Louis, MO 63101

April 3, 2020                        /s/ Christina Hauck