**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| QMAXX PRODUCTS GROUP, INC., | ) Case No. 20-41063-659 |
| | ) Honorable Kathy Surratt-States |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |

## SUMMARY OF EXHIBITS

The following exhibits are filed in support of the Lender Group's Reply to Objection to

Petitioning Creditors and Alleged Debtor to Motion to Abstain:

Exhibit 1.  QMaxx Products Group, Inc. Financial Highlights.

Exhibit 2.  E-mail from Craig Hiddleston to Stacey Brown.

Exhibit 3.  QMaxx Notice of Public Foreclosure Accounting Data Sheet.

Exhibit 4.  Multiple e-mails between Jim Bannes, Craig Hiddleston and others.

Exhibit 5.  Minutes of a Special Meeting of the Board of Directors of QMaxx
Products Group, Inc. May 14, 2020.

Exhibit 6.  QMaxx Products Group, Inc. Written Consent of the Board of Directors in
Lieu of Special Meeting.

Exhibit 7.  E-mail from Thomas Riske to David Sosne dated May 14, 2020.

Respectfully Submitted,

SUMMERS COMPTON WELLS LLC

Date:  June 1, 2020

By:/s/ David A. Sosne
DAVID A. SOSNE (#28365MO)
BRIAN J. LAFLAMME (#49776MO)
8909 Ladue Road
St. Louis, MO 63124
(314) 991-4999/(314) 991-2413 Fax
Email: dasattymo@summerscomptonwells.com
            blaflamme@summerscomptonwells.com

#2506632v1

| SUMMARIZED PROFIT AND LOSS STATEMENT | Jan-Dec 2016 | Jan-Dec 2017 | Jan-Dec 2018 | Jan-Dec 2019 |
|---|---|---|---|---|
| Revenue | 292,203 | 283,509 | 164,784 | 218,219 |
| Gross Profit | 213,669 | 148,132 | 98,681 | 116,619 |
| Cash Compensation to Employees / Contractors | 94,792 | 477,109 | 131,127 | 96,397 |
| Option Compensation to Employees / Contractors | 135,525 | 199,634 | 423,709 | 47,723 |
| Interest Expense | 38,529 | 41,326 | 40,950 | 60,904 |
| Other | 597,411 | 747,192 | 331,232 | 156,662 |
| Total Expenses | 866,257 | 1,465,261 | 927,017 | 361,686 |
| Net Income | (652,588) | (1,317,129) | (828,336) | (245,066) |
| RETAINED DEFICIT PER BALANCE SHEET AT YEAR END | (2,645,314) | (3,957,109) | (4,883,309) | (5,128,374) |

EXHIBIT

tabbies

1

| | |
|---|---|
| **From:** | chiddleston@qmaxxproducts.com |
| **Sent:** | Friday, November 22, 2019 4:32 PM |
| **To:** | 'Stacey Brown' |
| **Subject:** | Cash to pay default interest 2019-11-22.xlsx |
| **Attachments:** | Cash to pay default interest 2019-11-22.xlsx |



Revised to reflect not paying interest and assuming Edgewater pays the $9k they owe.

Outstanding question: if we pay the default interest, does that remedy the default such that QMaxx is no longer in default?

Second question: if we pay the default interest, QMaxx runs out of cash within 30 days. Without paying the interest and Pro-Shot and Edgewater both pay their outstanding amounts, then QMaxx has cash in the bank 30 days from now.

I'm uncomfortable making this decision given the multiple hats I'm wearing. I suggest Dave makes this decision.

Craig

## QMAXX NOTICE OF PUBLIC FORECLOSURE ACCOUNTING DATA SHEET

| Publication | Cost | Type of Publication | Viewership | Publication Date(s) |
|---|---|---|---|---|
| National Oil and Lube News | $362.70 | Online; Classifieds Section | 50,000 page views per month | Run Dates: 2.11.2020-2.29.2020 |
| Chemical Engineering | $2,750 | Text Advertisement on E-newsletter | 46,000 | E-newsletter 2.12.2020 |
| | $2,750 | Text Advertisement on E-newsletter | 46,000 | E-newsletter 2.19.2020 |
| Machinery Lubrication | $0.00 | E-Newsletter Insertion | 35,000 | E-newsletter 2.13.2020 |
| Corrosionpedia | $1,000 | E-mail blast to subscribers | 21,000 | Sent 2.12.2020 |
| San Diego Business Journal | $264.40 | Newspaper, Print | 33,000 | 2.17.2020 |
| | | Newspaper, Print | 33,000 | 2.24.2020 |
| Bellingham Herald | $1,162.20 | Newspaper, Print | 77,000 | 2.12.2020 |
| | | Newspaper, Print | 77,000 | 2.19.2020 |
| | | Newspaper, Print | 77,000 | 2.26.2020 |
| Portland Business Tribune | $140.00 | Newspaper, Print | 100,000 | 2.14.2020 |
| | | Newspaper, Print | 100,000 | 2.21.2020 |
| FMG Shooting Industry | $3,500 | Website Homepage Ad | 26,900 page views per month | Run Date: 2.14.2020-2.28.2020 |
| | | Dealer Advantage Email | 13,000 | Sent 2.20.2020 |
| | | Homepage Banner | | Run Dates: 2.14.2020-2.28.2020 |
| | | Center Homepage Editorial Spot | | Run Dates: 2.14.2020-2.28.2020 |

| Total: | $11,929.30 | | Total: 734,900 | |
|---|---|---|---|---|



**From:** chiddleston@qmaxxproducts.com
**Sent:** Monday, August 27, 2018 12:00 PM
**To:** 'Jim Bannes'
**Subject:** RE: Compensation for limited cash



Jim,

What we're able to offer is 12,500 options per month with a $0.34/sh strike price. This increase will be effective 7/1/2018 and will continue until 12/31/2018 at which time we'll re-evaluate (in the event we aren't properly funded by that time).

Please note that you are the most senior person at QMaxx still receiving cash compensation.

Please also note that we are very appreciative of your continued effort and commitment while not receiving the cash compensation you would prefer. We have very promising investor discussions ongoing that involve a QMaxx valuation well in excess of the $0.34/sh strike price of the options you are receiving.

Let me know if you would like to discuss. Otherwise, please confirm this offer is acceptable and we'll start recording the 12,500 options per month beginning with July.

Best,

Craig

-----Original Message-----
From: Jim Bannes <jimb@qmaxxproducts.com>
Sent: August 23, 2018 9:46 AM
To: 'Craig Hiddleston' <chiddleston@qmaxxproducts.com>
Subject: RE: Compensation for limited cash

Craig...any update?...I believe I've been more than patient...thanks, Jim

Jim Bannes
Director, Business Development: Sales Channels QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation

cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

-----Original Message-----
From: Craig Hiddleston [mailto:chiddleston@qmaxxproducts.com]
Sent: Tuesday, July 03, 2018 12:17 PM
To: Jim Bannes
Subject: Re: Compensation for limited cash

Jim,

I'm still working on this. We need to make an adjustment to QMaxx's option pool and that needs board approval, which I've asked for.

Craig

Sent from my iPhone

> On Jun 18, 2018, at 2:33 PM, Jim Bannes <jimb@qmaxxproducts.com> wrote:
>
> Craig...any progress on this?...thx, Jim
>
> Jim Bannes
> Director, Business Development: Sales Channels QMaxx Products Group,
> Inc.
> 1781 Larkin Williams Road
> Fenton, MO 63026
> jimb@qmaxxproducts.com
> www.QMAXXproducts.com
> cell #: (314) 306-3687
> main #: (888) 389-9455
>
>
>
> CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.
>
> -----Original Message-----
> From: Craig Hiddleston [mailto:chiddleston@qmaxxproducts.com]
> Sent: Tuesday, June 05, 2018 5:19 PM
> To: Jim Bannes
> Subject: Compensation for limited cash
>
> Jim,
>

2

> The other day I said I'd get you details today re share based compensation, but I need some extra time. I need to create and send out a presentation for an Ag equipment dealer and reseller and the recipient is waiting for it.
>
> Apologies...
>
> Craig
>
> Sent from my iPhone
>

| | |
|---|---|
| **From:** | Jim Bannes <jimb@qmaxxproducts.com> |
| **Sent:** | Monday, June 17, 2019 10:48 AM |
| **To:** | 'Craig Hiddleston' |
| **Subject:** | RE: Compensation |

Craig ...juts a reminder that my adjustment to pay goes into effect today (for this Friday's payroll)...I will email Chris and copy you...

in

Jim Bannes
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** Jim Bannes [mailto:jimb@qmaxxproducts.com]
**Sent:** Monday, May 20, 2019 3:30 PM
**To:** 'Craig Hiddleston'
**Subject:** RE: Compensation

Please call asap.

in

Jim Bannes
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

1

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** Jim Bannes [mailto:jimb@qmaxxproducts.com]
**Sent:** Monday, May 20, 2019 12:38 PM
**To:** 'Craig Hiddleston'
**Subject:** RE: Compensation

Craig,

Please call ayc...

Jim Bannes in
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** Jim Bannes [mailto:jimb@qmaxxproducts.com]
**Sent:** Friday, May 17, 2019 4:02 PM
**To:** 'Craig Hiddleston'
**Subject:** RE: Compensation

???

Jim Bannes in
Director, Business Development: Sales Channels

QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** Jim Bannes [mailto:jimb@qmaxxproducts.com]
**Sent:** Thursday, May 16, 2019 8:28 AM
**To:** Craig Hiddleston
**Subject:** Compensation

Craig,

I need to return to my mutually agreed upon salary beginning with the next payroll submission (Monday, May 20). Please contact me should you have any questions or would like to discuss.

Thanks, Jim

**Jim Bannes**
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455



CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express

prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

4

| | |
|---|---|
| **From:** | David McCreery <davidm@qmaxxproducts.com> |
| **Sent:** | Wednesday, February 12, 2020 12:24 PM |
| **To:** | chiddleston@qmaxxproducts.com |
| **Subject:** | Re: Stacey |

I'm on the phone with her and Max about all with all these issues. She knows it's temporary tomorrow and Friday while Max is out of town. Otherwise Max would of taken the calls from Jim and it was her call.

I brought in other people and she wanted this girl and she brought her . She said she is not upset and wants someone that is fast and no learning curve

She said it's only temporary and she does not want anyone else.   Set up a plan to give her options at some rate.

She said that she is not upset and wants to catch up with her later.

Sent from my iPhone


On Feb 12, 2020, at 12:13 PM, chiddleston@qmaxxproducts.com wrote:


Dave,

I just spoke to Stacey and she is extremely upset about having QMaxx's calls forwarded to her. Furthermore, she's extremely upset (broke into tears) about the prospect of hiring someone at $30 / hour to help her when she is only getting $20 / hour. We can't hire someone who is less useful to us than Stacey at a rate more than Stacey's rate.

She can't handle answering calls while trying to catch up. Why can't calls be forwarded to Max?

Craig

| | |
|---|---|
| **From:** | chiddleston@qmaxxproducts.com |
| **Sent:** | Saturday, February 15, 2020 11:00 AM |
| **To:** | 'Stacey Brown' |
| **Cc:** | 'Stacey Brown' |
| **Subject:** | RE: 2/14/20 Payroll Breakdown |

Thanks Stacey.

Please issue the check to yourself per the details below ($2,100 gross pay).

Please do not issue the check to Jim. Jim and I spoke late in the day yesterday, he did not confirm that he agreed with the details of the email I sent him a couple days ago with respect to this payroll. He and I agreed to talk about it on Monday, after which I will update you as to whether to pay Jim.

Craig

**From:** Stacey Brown <staceyb@qmaxxproducts.com>
**Sent:** February 15, 2020 8:51 AM
**To:** Craig Hiddleston <chiddleston@qmaxxproducts.com>
**Subject:** 2/14/20 Payroll Breakdown

Please let me know if ok to cut checks.

| Jim Payroll | | Stacey Payroll | |
|---|---|---|---|
| Gross Wages | 2000.00 | Gross Wages | 2100.00 |
| Federal w/h | 150.04 | Federal w/h | 192.11 |
| Fica – M/C | 29.00 | Fica – M/C | 30.45 |
| Fica-SS | 124.00 | Fica-SS | 130.20 |
| State w/h | 75.00 | State w/h | 78.00 |
| Net Wages | 1621.96 | Net Wages | 1669.24 |

**2/14/200 Payroll Breakdown**

| | |
|---|---|
| GROSS WAGES | 4,100.00 |
| SOCIAL SECURITY & MEDICARE | 313.65 |
| FEDERAL UNEMPLOYMENT | 0.00 |
| STATE UNEMPLOYMENT | 64.11 |
| WORKERS COMPENSATION | 17.21 |
| ADMIN FEE | 0.00 |
| SUB-TOTAL | 4,494.97 |

Sincerely,
**Stacey Brown**
Finance Department

1

Qmaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026

| | |
|---|---|
| **From:** | chiddleston@qmaxxproducts.com |
| **Sent:** | Friday, February 21, 2020 3:33 PM |
| **To:** | 'Jim Bannes' |
| **Cc:** | 'David McCreery' |
| **Subject:** | RE: Outstanding payables |

Jim,

This is acceptable. Thanks for your patience.

Craig

**From:** Jim Bannes <jimb@qmaxxproducts.com>
**Sent:** February 21, 2020 10:37 AM
**To:** chiddleston@qmaxxproducts.com
**Cc:** 'David McCreery' <davidm@qmaxxproducts.com>
**Subject:** RE: Outstanding payables

Craig,

I'm okay with one of the $2,000.00 checks now and the other when cash is available. I will accept a reduction in pay to $20.00 per hour provided I am compensated for the $5.00 per hour reduction at such time as our "current cash position" improves.

Jim

**Jim Bannes** in
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** chiddleston@qmaxxproducts.com [mailto:chiddleston@qmaxxproducts.com]
**Sent:** Friday, February 21, 2020 12:15 PM

**To:** 'Jim Bannes'
**Cc:** 'David McCreery'
**Subject:** RE: Outstanding payables

Jim,

We do not have the ability to pay both $2,000.00 payroll checks at this time. Please confirm you are ok with receiving one of the $2,000.00 checks now and we will pay the other $2,000.00 when cash is available.

Subsequent to 2/14/20, you will be paid $20.00 per hour for hours that Dave approves (approval in advance for activities / projects).

Please confirm and we will get the $2,000.00 check to you.

Craig

**From:** Jim Bannes <jimb@qmaxxproducts.com>
**Sent:** February 20, 2020 7:15 AM
**To:** chiddleston@qmaxxproducts.com
**Cc:** 'David McCreery' <davidm@qmaxxproducts.com>
**Subject:** RE: Outstanding payables

Craig,

Thank you for taking the lead on this.

To clarify, I will be paid $2,000.00 for the 2 week period ended 1/24/20 (scheduled pay date 1/31/20) and $2,000.00 for the 2 week period ended 2/7/20 (scheduled pay date 2/14/20). I expect both to be available to me via check no later than this Friday, February 21, 2020.

In light of our current cash position, and with a personal financial investment in the company, I will accept a reduction in pay to $20.00 per hour provided I am compensated for the $5.00 per hour reduction at such time as our "current cash position" improves.

There is also ~$2,500.00 due to me for company expenses I incurred for the period of 6/01/19 through 12/31/19. I expect this to be paid as soon as our "current cash position" improves.

Regards, Jim

**Jim Bannes** in
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.

**From:** chiddleston@qmaxxproducts.com [mailto:chiddleston@qmaxxproducts.com]
**Sent:** Wednesday, February 12, 2020 11:58 AM
**To:** 'Jim Bannes'
**Cc:** 'David McCreery'
**Subject:** RE: Outstanding payables

Jim,

I just spoke to Dave about your payroll in light of our current cash position. What we agreed to is:
- Pay you $2,000 for the pay periods including 1/31/2020 and 2/14/2020
- Pay you $20 / hour going forward for hours you work that are pre-approved by Dave

Dave and I discussed the conversation you and he had during the week of 1/27/2020 with respect to QMaxx not being able to make payroll for the period ended 1/31/2020 and needing to reduce our expenditures (which you and I subsequently discussed as not being clearly communicated to you).

We realize this is difficult but this is the best QMaxx can offer given how little cash we have and the unpaid payables that we have.

Please call Dave if you have any questions.

Craig

**From:** Jim Bannes <jimb@qmaxxproducts.com>
**Sent:** February 11, 2020 5:51 PM
**To:** chiddleston@qmaxxproducts.com
**Cc:** 'David McCreery' <davidm@qmaxxproducts.com>; 'Stacey Brown' <staceyb@qmaxxproducts.com>; 'Jason Luzar' <jasonl@qmaxxproducts.com>; 'Max McCreery' <maxm@qmaxxproducts.com>
**Subject:** RE: Outstanding payables

Craig...per your direction, I tried several times (unsuccessfully) to reach Dave to discuss the status of the outstanding payroll...I would appreciate a timely reply/resolution...

Regards, Jim

Jim Bannes
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687
main #: (888) 389-9455

3

**From:**           David McCreery <davidm@qmaxxproducts.com>
**Sent:**           Tuesday, February 25, 2020 2:38 PM
**To:**             Stacey Brown
**Cc:**             Craig Hiddleston
**Subject:**        Re: Back Pay


Stacey also pay the money for the shot show down payment for QMaxx to reimburse my mother.

We will get through this situation.

Dave

Sent from my iPhone

> On Feb 25, 2020, at 2:35 PM, David McCreery <davidm@qmaxxproducts.com> wrote:
>
>
> Stacey we do not want to cause you any more financial issues.  Please pay yourself for your back money that is owed to you for your second week.
>
> I know Craig and I are working to solve the issues.
>
> Craig agrees to pay you the second check.
>
> Thanks and proceed
>
>
> Sent from my iPhone

1

**From:** chiddleston@qmaxxproducts.com
**Sent:** Thursday, February 27, 2020 11:31 AM
**To:** 'Stacey Brown'
**Subject:** RE: Update

Let's circle up and look at cash on hand.

**From:** Stacey Brown <staceyb@qmaxxproducts.com>
**Sent:** February 27, 2020 8:30 AM
**To:** Craig Hiddleston <chiddleston@qmaxxproducts.com>
**Subject:** Fwd: Update

What does he mean 2 past due payrolls? I paid him for one of them, so he just has one past due. I did not tell him I got paid for my other back pay.

HOWEVER, believe it or not tomorrow is payroll time again. I need to know how you want me to proceed with that. Sorry. 😕

Stacey

This message was sent from my mobile device, please excuse any typos and abbreviations.

Begin forwarded message:

**From:** Jim Bannes <jimb@qmaxxproducts.com>
**Date:** February 27, 2020 at 8:57:27 AM CST
**To:** Craig Hiddleston <chiddleston@qmaxxproducts.com>
**Cc:** Stacey Brown <staceyb@qmaxxproducts.com>
**Subject:** Update

Good Morning Craig...I trust you've recovered from Tuesday's "shareholder" meeting/call!?...would you please let Stacy and I know the status of the two (2) past due payrolls?...Regards, Jim

**Jim Bannes** in
Director, Business Development: Sales Channels
QMaxx Products Group, Inc.
1781 Larkin Williams Road
Fenton, MO 63026
jimb@qmaxxproducts.com
www.QMAXXproducts.com
cell #: (314) 306-3687



CONFIDENTIALITY NOTICE: This e-mail is intended solely for use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged and exempt from disclosure under applicable law. If the reader is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. This communication may also contain data subject to U.S. export laws. If so, that data subject to the International Traffic in Arms Regulation cannot be disseminated, distributed or copied to foreign nationals, residing in the U.S. or abroad, absent the express prior approval of the U.S. Department of State. If you have received this communication in error, please notify the sender by reply e-mail and destroy the e-mail message and any physical copies made of the communication.



# MINUTES OF A SPECIAL MEETING
## OF THE BOARD OF DIRECTORS
## OF
## QMAXX PRODUCTS GROUP, INC.

### May 14, 2020

A Special Meeting of the Board of Directors (the "Meeting") of QMAXX Products Group, Inc., a Delaware corporation (the "Company"), was held telephonically on Thursday, May 14, 2020, commencing at 11:00 a.m. Central Time, for the purposes stated in the Notice of Special Meeting given on May 8, 2020, by Craig Hiddleston, as President of the Company. A copy of such Notice is attached hereto as "Exhibit "A".

Craig Hiddleston, as President of the Company, presided over the Meeting.

Robert Meyer was appointed to serve as Secretary of the Meeting, without objection.

Present at the Meeting telephonically were the following Company Directors:

> Craig Hiddleston
> Stephen Blaschke
> Robert Meyer
> David McCreery

Also present at the Meeting telephonically were attorneys David Sosne and Thomas Niemann of Summers Compton Wells LLC, as invited guests of a majority of the Directors, and attorney Thomas Riske of Carmody Macdonald P.C. and Christopher Jones of the Law Firm of Christopher Jones, as invited guests of David McCreery.

The Directors and invited attorneys confirmed that no other persons were present telephonically or otherwise at the Meeting and that the Meeting would not be recorded.

With all of the Company's Directors present, a quorum existed.

Mr. Hiddleston called the Meeting to order and confirmed that Notice of the Meeting had been duly given in accordance with the Company's By-Laws.

### First Order of Business

Mr. Hiddleston opened discussion on the 1st order of business, namely discussion of renewal or replacement of the Company's existing insurance policies, including Directors & Officers insurance and commercial general liability insurance, and payment of applicable premiums.

Mr. Hiddleston advised that the Company's Director & Officer policy would expire on May 27, 2020. Mr. Hiddleston indicated that last year's premium for this insurance was just under $7,000. Mr. McCreery advised that the Company did not, at this time, have sufficient cash to pay the anticipated renewal premium. Mr. McCreery advised that he and other Company employees were working hard to collect payables so that the Company would have the funds to pay this policy.

Stephen Blaschke asked when the Company's commercial general liability insurance policy
would expire. Mr. McCreery said that he did not know.

After discussion on the 1st order of business ended, Mr. Hiddleston made a motion to present the
following Resolution to the Meeting, which motion was duly seconded by Mr. Blaschke:

> RESOLVED that Craig Hiddleston, as the President of the Company, is hereby
> authorized and directed (1) to take whatever action he determines to be necessary or
> appropriate to obtain, renew and/or maintain, as applicable, all of the policies of
> insurance customarily maintained by the company, including, but not limited to,
> Directors & Officers and Commercial General Liability insurance policies, (2) to
> prepare, execute and deliver whatever documents he determines to be necessary or
> appropriate in connection with the foregoing, (3) to utilize such of the company's
> personnel as he may require in connection with the foregoing, and (4) to arrange for the
> payment, from the company's funds, of any premiums, fees, costs or other amounts in
> connection with any of the foregoing.

> The foregoing Resolution was approved unanimously by the Directors.

## Second Order of Business

Mr. Hiddleston opened discussion on the 2nd order of business, namely discussion of the
Company's plans to protect its pending dry-cleaning and metal cleaning patents, which are
approaching national phase deadlines on June 13, 2020 and July 18, 2020, respectively, including
payment of any applicable fees.

David McCreery had very little information about the status of the Company's patents, including
the costs to renew/extend/preserve and how those costs would be paid. Mr. McCreery stated that
the patents may have little to no value although he was unable to provide any basis for that
statement. The Board discussed how to value the patents, including the possibility of hiring an
outside firm to evaluate. However, Mr. McCreery advised that the Company did not have the
funds to pay for such a valuation. Mr. Hiddleston expressed his belief that, in the absence of a
contrary valuation, that the Company's patents had some value and should be preserved and
protected.

After discussion on the 2nd order of business ended, Mr. Hiddleston made motions to present the
following Resolutions to the Meeting, which motions were duly seconded by Mr. Blaschke:

> RESOLVED that the Company believes that its patents have value which should
> be determined as quickly as possible, but in all events before the patents lapse.

> The foregoing Resolution was approved unanimously by the Directors.

> RESOLVED that Craig Hiddleston, as the President of the Company, is hereby
> authorized and directed (1) to take whatever action he determines to be necessary or
> appropriate to protect the Company's pending dry-cleaning, metal cleaning and other
> patents, (2) to prepare, execute and deliver whatever documents he determines to be
> necessary or appropriate in connection with the foregoing, (3) to utilize such of the
> company's personnel as he may require in connection with the foregoing, (4) to hire
> and/or engage any persons on behalf of the Company to assist in connection with the
> foregoing, and (5) to arrange for the payment, from the company's funds, of any fees,

2

costs or other amounts in connection with any of the foregoing.

The foregoing Resolution was approved by the Directors by a vote of 3 for (Messrs. Hiddleston,     Blaschke and Meyer) and 1 against (Mr. McCreery).

## Third Order of Business

Mr. Hiddleston opened discussion on the 3rd order of business, namely discussion of the completion of assignments of patents from David McCreery to the Company.

Mr. Hiddleston confirmed that the patents were to be duly assigned to the Company by David McCreery and were relied upon by the Series A and Series B investors in connection with their investments in the Company. Mr. Hiddleston then confirmed that, due to an apparent oversight, these assignments had not yet been recorded with the United States Patent and Trademark Office or the corresponding patent offices in Canada and Mexico. Mr. McCreery could not explain why these assignments had not been properly recorded and when they would be recorded in accordance with the applicable assignment agreements. Mr. McCreery stated that he would need to consult with legal counsel before proceeding.

After discussion on the 3rd order of business ended, Mr. Hiddleston made a motion to present the following Resolution to the Meeting, which motion was duly seconded by Mr. Blaschke:

> **RESOLVED** that Craig Hiddleston, as the President of the Company, is hereby authorized and directed (1) to take whatever action he determines to be necessary or appropriate to complete the assignment of the patents from David McCreery to the Company, (2) to prepare, execute and deliver whatever documents he determines to be necessary or appropriate in connection with the foregoing, (3) to hire and/or engage any persons on behalf of the Company to assist in connection with the foregoing, (4) to utilize such of the Company's personnel as he may require in connection with the foregoing, and (5) to arrange for the payment, from the Company's funds, of any fees, costs or other amounts in connection with the completion of the foregoing assignment.

> The foregoing Resolution was approved by the Directors by a vote of 3 for (Messrs. Hiddleston, Blaschke and Meyers) and 1 against (Mr. McCreery).

## Fourth Order of Business

Mr. Hiddleston noted for the record that David McCreery was asked to deliver certain financial information to the Directors in advance of the Meeting to allow the Directors to better understand and discuss the Company's financial condition. Mr. McCreery sent an email with very limited financial information to the Directors only minutes before the start of the Meeting.

Mr. Hiddleston opened discussion on the 4th order of business, namely discussion of the Company's financial condition

Mr. Hiddleston asked if Stacey Brown was still working for the Company. Mr. McCreery indicated that she was unable to get all the work done due to workload and health issues. Mr. McCreery confirmed that Ms. Brown was making daily bookkeeping entries, including receipts

3

and payments. Mr. Hiddleston asked who was managing the Company's daily finances. Mr. McCreery said that was "per usual." Mr. McCreery advised that he and Ms. Brown would talk about which expenses to pay and come to a decision after that discussion. Mr. McCreery advised that the Company had only $1,000 to $2,000 in the Company's bank account. Mr. McCreery said he had considered involving outside accounting assistance but the cost was prohibitive at $20,000 to $30,000.

Mr. Hiddleston proposed that Mr. McCreery be directed by the Board to deliver certain financial information to the Board by the close of business on May 15, 2020. Mr. McCreery stated that the Company's books were in very poor condition and that only the 2019 financial statements were available for delivery before May 19, 2020. With this in mind, the other Directors agreed to require Mr. McCreery to deliver financial documents to the extent available or easily produced with a good faith effort. Attorneys Jones and Riske were allowed to interpose an objection to his production of the Company's payroll information or financial information relating to periods after the date of the Meeting, arguing that such information was not within the scope of the Notice of Special Meeting. Attorneys Sosne and Niemann disagreed with this characterization of the scope of the Notice and noted the Board's duty to understand the financial condition of the Company, as expressly contemplated in the Notice, including the Company's past, present and future condition, a duty that is heightened under the current circumstances.

Following this discussion, Mr. Hiddleston made a motion to present the following Resolution to the Meeting, which motion was duly seconded by Mr. Meyer:

> **RESOLVED** that David McCreery, as an officer of the Company, is hereby directed to prepare and deliver to the Board of Directors, no later than the close of business on May 15, 2020, the Company's balance sheet, profit and loss statement, and cash flow statement for the year ended December 31, 2019; and that David McCreery, as an officer of the Company, is hereby directed to deliver to the Board of Directors, to the extent available or producible in good faith, the Company's balance sheet, profit and loss statement, and cash for statement for the quarter ended March 31, 2020 and for the period ended April 31, 2020, current Accounts Payable and Accounts Receivable statements with sufficient detail, all Company financial statements and/or reports prepared since March 31, 2020, all payroll records for 2019 and 2020, and such other financial statements and records as requested by Craig Hiddleston from time to time.

The foregoing Resolution was approved unanimously by the Directors.

Mr. Hiddleston proposed that Mr. McCreery be directed by the Board to deliver financial information to the Board on an ongoing basis. Attorneys Jones and Riske were allowed to interpose an objection to his production of Company financial information relating to periods after the date of the Meeting, arguing that such information was not within the scope of the Notice of Special Meeting. Attorneys Sosne and Niemann disagreed with this characterization of the scope of the Notice and noted the Board's duty to understand the financial condition of the Company, as expressly contemplated in the Notice, including the Company's past, present and future condition, a duty that is heightened under the current circumstances. Mr. McCreery indicated it would be difficult to provide future information within any period of time given its poor record keeping to date. Mr. McCreery stated he is not withholding information and would make effort to provide as possible.

Following this discussion, Mr. Hiddleston made a motion to present the following Resolution to

4

the Meeting, which motion was duly seconded by Mr. Blaschke:

> **RESOLVED** that David McCreery, as an officer of the Company, is hereby directed to prepare and deliver to the Board of Directors, as soon as reasonably possible, copies of the Company's balance sheet, profit and loss statement, cash flow statement and payroll register/statement for each calendar month going forward; copies of the Company's balance sheet, profit and loss statement, and cash for statement for each quarter going forward; and such other financial statements and records prepared or available for any periods after the date hereof as requested by Craig Hiddleston from time to time.

The foregoing Resolution was approved unanimously by the Directors.

Following this discussion, Mr. Hiddleston made a motion to present the following Resolution to the Meeting, which motion was duly seconded by Mr. Blaschke:

> **RESOLVED** that Craig Hiddleston, as President of the Company, is hereby authorized to have access, including online access, to all of the Company's financial information and resources, including, but not limited to the Company's Quickbooks accounting/bookkeeping software and bank accounts.

The foregoing Resolution was approved unanimously by the Directors.

Attorneys Jones and Riske objected once again that these discussions were outside the scope of the Notice of the Special Meeting. Further discussion, including comments from attorneys Sosne and Niemann addressed the rights of Mr. Hiddleston and the Board to have access to the financial information.

Mr. Hiddleston made a motion to present the following Resolution to the Meeting, which motion was duly seconded by Mr. Blaschke:

> **RESOLVED** that David McCreery, as an officer of the Company, shall, until further notice from the Board, (1) take such action as may be necessary or appropriate to allow Craig Hiddleston to have access, including online access, to all of the Company's financial information and resources, including, but not limited to the Company's accounting/bookkeeping software (Quickbooks) and bank accounts, and (2) direct all company personnel to cooperate with Craig Hiddleston in connection with his review of the financial condition of the Company.

The foregoing Resolution was approved unanimously by the Directors.

Mr. Hiddleston asked for a motion to adjourn the Meeting. Mr. Meyer made such a motion, which was seconded by Mr. Blaschke. The motion carried unanimously and the Meeting was duly adjourned.

Robert Meyer

Acting Secretary of the Meeting

6



# QMAXX PRODUCTS GROUP, INC.
## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## IN LIEU OF SPECIAL MEETING

### Dated March ___ , 2018

Pursuant to Section 141(f) of the Delaware General Corporation Law, the undersigned, being all of the members of the Board of Directors (the "Board") of QMaxx Products Group, Inc., a Delaware corporation (the "Company"), in lieu of a special meeting of the Board, the call and notice of which are hereby expressly waived, hereby consent to the adoption of and hereby adopt the following resolutions effective as of the date set forth above:

### Hiddleston Employment Agreement

WHEREAS, the Board desires to employ Craig Hiddleston ("Executive") as President and Chief Financial Officer of the Company, and Executive desires to accept such employment, upon the terms and subject to the conditions of that certain Employment Agreement between the Company and Executive in substantially the form attached hereto as Exhibit A (the "Employment Agreement");

NOW, THEREFORE, BE IT RESOLVED, that the form, terms and provisions of the Employment Agreement are hereby authorized and approved by the Board in all respects; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver the Employment Agreement in substantially the form presented to the Board, with such changes, additions or deletions thereto as such officer may approve, such officer's execution and delivery thereof to be conclusive evidence of such approval, without the necessity of further approval by the Board; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver such other documents or instruments, and to take such further action as such officer may deem necessary, advisable or proper to accomplish the purposes of the foregoing resolutions.

### Issuance of Warrant

WHEREAS, the Board believes it to be in the best interests of the Company to issue to Executive a warrant to purchase 2,036,765 shares of the Company's Common Stock at an exercise price of $0.34 per share, in substantially the form attached hereto as Exhibit B (the "Warrant");

WHEREAS, the exercise price per share of the Common Stock purchasable upon exercise of the Warrant is the fair market value of the Company's Common Stock as of the date hereof;

NOW, THEREFORE, BE IT RESOLVED, that the issuance of the Warrant and the form, terms and provisions of the Warrant are hereby authorized and approved by the Board in all respects; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver the Warrant in substantially the form presented to the Board, with such changes, additions or deletions thereto as such officer may approve, such officer's execution and delivery thereof to be conclusive evidence of such approval, without the necessity of further approval by the Board; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver such other documents or instruments, and to take such further action as such officer may deem necessary, advisable or proper to accomplish the purposes of the foregoing resolutions.

## Exercise of Put Right

WHEREAS, pursuant to Section 6.9 of that certain Consulting Agreement dated effective December 5, 2016 between the Company and Executive (the "Consulting Agreement"), Executive is exercising his right (the "Put Right") to require the Company to repurchase all of Executive's shares of Common Stock of the Company, consisting of 1,602,793 shares of Common Stock (the "Put Shares"), in exchange for the cancellation of that certain Promissory Note and Pledge Agreement dated December 5, 2016 between the Company and Executive in the principal amount of $641,117 (the "Note");

WHEREAS, the Put Shares were originally issued to Executive out of shares reserved for issuance under the Company's 2016 Stock Option Plan (the "Plan") and upon repurchase by the Company shall be returned to and reserved for issuance under the Plan;

NOW, THEREFORE, BE IT RESOLVED, that the repurchase of the Put Shares and the cancellation of the Note by the Company are hereby authorized and approved by the Board in all respects; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver such documents or instruments, and to take such action as such officer may deem necessary, advisable or proper to accomplish the purposes of the foregoing resolutions.

## Grant of Stock Option

WHEREAS, in accordance with the QMaxx Products Group, Inc. 2016 Stock Option Plan (the "Plan"), the Board desires to grant to Executive an option under the Plan (the "Option") to purchase 1,602,793 shares of the Company's Common Stock at an exercise price of $0.40 per share, as detailed in that certain Stock Option Agreement between the Company and Executive in substantially the form attached hereto as Exhibit C (the "Stock Option Agreement");

WHEREAS, the exercise price per share of the Common Stock purchasable upon exercise of the Option is in excess of the fair market value of the Company's Common Stock as of the date hereof and has been negotiated and agreed to by the Company and Executive;

NOW, THEREFORE, BE IT RESOLVED, that the grant of the Option and the form, terms and provisions of the Stock Option Agreement are hereby authorized and approved by the Board in all respects; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver the Stock Option Agreement in substantially the form presented to the Board, with such changes, additions and deletions thereto as such officer may approve, such officer's execution and delivery thereof to be conclusive evidence of such approval, without the necessity of further approval by the Board; and further

RESOLVED, that any officer of the Company is hereby authorized and directed to execute and deliver such other documents or instruments, and to take such further action as such officer may deem necessary, advisable or proper to accomplish the purposes of the foregoing resolutions.

### General

RESOLVED, that any officer of the Company is hereby authorized and empowered to take or cause to be taken all such further legal actions and to sign, execute, acknowledge, certify, deliver, accept, record, and file all such further instruments in the name of and on behalf of the Company as in the judgment of such officer may be necessary, desirable or advisable in order to carry out the intent, and to accomplish the purposes, of the foregoing resolutions; and further

RESOLVED, that all actions previously taken by any officer or manager of the Company relating to the foregoing resolutions including any matters related thereto and any legal activities previously performed or taken by any officer or manager are hereby approved, ratified, and confirmed in all respects as authorized acts of the Company, as if each act or activity had been presented to and approved by the undersigned prior to being taken.

*[Remainder of page intentionally blank.]*

IN WITNESS WHEREOF, the undersigned have executed this consent effective as of the date first set forth above.

**DIRECTORS:**

_____
David McCreery

_____
Stephen Blaschke

_____
Robert Meyer

_____
Craig Hiddleston

VITNESS WHEREOF, the undersigned have executed this consent effective as of the forth above.

Case 20-41063   Doc 33-1   Filed 06/01/20   Entered 06/01/20 15:15:04   Exhibits
Pg 31 of 34

**DIRECTORS:**

_____
David McCreery

_____
Stephen Blaschke

_____
Robert Meyer

_____
Craig Hiddleston

RESOLVED, that any officer of the Company is hereby authorized and empowered to take or cause to be taken all such further legal actions and to sign, execute, acknowledge, certify, deliver, accept, record, and file all such further instruments in the name of and on behalf of the Company as in the judgment of such officer may be necessary, desirable or advisable in order to carry out the intent, and to accomplish the purposes, of the foregoing resolutions; and further

RESOLVED, that all actions previously taken by any officer or manager of the Company relating to the foregoing resolutions including any matters related thereto and any legal activities previously performed or taken by any officer or manager are hereby approved, ratified, and confirmed in all respects as authorized acts of the Company, as if each act or activity had been presented to and approved by the undersigned prior to being taken.

*[Remainder of page intentionally blank.]*

514900 000007 DALLAS 2561448.1

IN WITNESS WHEREOF, the undersigned have executed this consent effective as of the date first set forth above.

**DIRECTORS:**

_____
David McCreery

_____
Stephen Blaschke

_____
Robert Meyer

_____
Craig Hiddleston

Signature Page to Board Consent
QMaxx Products Group, Inc.

**EXHIBIT A**

**Employment Agreement**

[Exhibit A]
**EXHIBIT B**

**Warrant**

[Exhibit B]
**EXHIBIT C**

**Stock Option Agreement**

RESOLVED, that any officer of the Company is hereby authorized and empowered to take or cause to be taken all such further legal actions and to sign, execute, acknowledge, certify, deliver, accept, record, and file all such further instruments in the name of and on behalf of the Company as in the judgment of such officer may be necessary, desirable or advisable in order to carry out the intent, and to accomplish the purposes, of the foregoing resolutions; and further

RESOLVED, that all actions previously taken by any officer or manager of the Company relating to the foregoing resolutions including any matters related thereto and any legal activities previously performed or taken by any officer or manager are hereby approved, ratified, and confirmed in all respects as authorized acts of the Company, as if each act or activity had been presented to and approved by the undersigned prior to being taken.

*[Remainder of page intentionally blank.]*

514900 000007 DALLAS 2561448.1

IN WITNESS WHEREOF, the undersigned have executed this consent effective as of the date first set forth above.

DIRECTORS:

_____
David McCreery

_____
Stephen Blaschke

_____
Robert Meyer

_____
Craig Hiddleston

Signature Page to Board Consent
QMaxx Products Group, Inc.

EXHIBIT A

Employment Agreement

[Exhibit A]
EXHIBIT B

Warrant

[Exhibit B]
EXHIBIT C

Stock Option Agreement
[Exhibit C]

**From:**      Thomas H. Riske <thr@carmodymacdonald.com>
**Sent:**      Thursday, May 14, 2020 10:49 AM
**To:**        David Sosne
**Cc:**        Robert E. Eggmann
**Subject:**   Q Maxx



David,

I realize it is only 15 minutes until the meeting but I just received some responsive information to number 4 of the notice from Stacey so thought I would pass it along for discussion for what it is worth even though I have not yet had a chance to reconcile with her.

Thanks,

Tom

1.  A/Rs since January of 2020.
2.  Work in progress A/R balance as of 5/14/20   $46,908
3.
4.  List of orders during this time period.
5.  66 orders totaling approximately $53k

### Debts since Involuntary

  A.  Work in progress A/P balance as of 5/14/20  $173,141
  B.  Involuntary Bankruptcy balance as of 5/14/20  $144,326
  C.  Outstanding Payroll balance as of 5/14/20  $ 7,148
  D.  Carmody MacDonald – $25,000 retainer fee (paid)
  E.  Christopher Jones – $21,900 (no payment paid to date)
  F.  Lathrop & Gage LLP – $6,750 (no payment paid to date)

### Draft Financial Statements

None. Year end 2019s will be done by Friday May 15.

**Thomas H. Riske**
Principal • Carmody MacDonald P.C.

120 S. Central Ave., Suite 1800
St. Louis, Missouri 63105
**Main** 314.854.8600 | **Direct** 314.854.8716
**Email** thr@carmodymacdonald.com

1